# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| STEPHEN R. FIELD, | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) Civil Action No. 6:11-CV-49 |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| **Defendant** | ) |

## REPORT AND RECOMMENDATION

Plaintiff , Stephen R. Field, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits, ("DIB") and supplemental security income benefits ("SSI"), under the Social Security Act, ("Act"), 42 U.S.C. §§ 401-433, 1381-1383f.

Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is now ripe for decision. Having carefully reviewed the administrative record, the legal memoranda and argument of counsel and the applicable law, I conclude that substantial evidence supports the decision of the Administrative Law Judge ("ALJ"). As such, I **RECOMMEND** that Plaintiff's motion for summary judgment (Dkt # 11) be **DENIED**, and that the Commissioner's motion for summary judgment (Dkt # 17) be **GRANTED**.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir.

2001).  This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Field failed to demonstrate that he was disabled under the Act.  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).  If such substantial evidence exists, the final decision of the Commissioner must be affirmed.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Field bears the burden of proving that he is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)(2006)).  The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(C)(i). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education and work experience. See 42 U.S.C. §§ 423(d)(2) and 1382c(a)(3)(B).

The Commissioner uses a five-step process to evaluate a disability claim.  Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002).  The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Heckler v. Campbell, 461 U.S. 458, 460-462 (1983);

2

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at step five to establish that the claimant maintains the Residual Functioning Capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Field was born on July 5, 1963 (Administrative Record, hereinafter "R." 37, 127) and is considered a younger individual under the Act. 20 C.F.R. §§ 404.1563(c), 416.963(c). Field's date last insured is December 31, 2013, and thus, he must show that his disability began before that date, and existed for twelve continuous months to receive DIB benefits. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101(a), 404.131(a). To receive SSI benefits, Field must establish that his disability began on or after the date he applied for benefits. 42 U.S.C. § 1383(a)(1); 20 C.F.R. § 416.501.

Field completed the eleventh grade of formal schooling and later earned a GED. (R. 38.) Field has a work history in light, medium and heavy work. This work includes jobs as a metal fabricator, telephone and data line installer, fast food assistant manager, waiter and floor covering sales estimator. (R. 68.) Field claimed that he last worked on April 30, 2008. (R. 38.) He collected unemployment during seven of the eight quarters from the fourth quarter in 2007

3

through the third quarter 2009. (R. 47-49, 64, 142-143.) Field reported that his daily activities include preparing meals, mowing his lawn, vacuuming, shopping, fishing and hunting. Field also socializes with friends as much as twice a week. (R. 175.)

## Claim History

Field filed for DIB and SSI, claiming that his disability began on April 30, 2008, asserting that depression, bipolar disorder, COPD, lumbar problems and a heart condition affect his ability to work. (R. 147.) Field also claimed that his conditions affect his ability to concentrate, that he feels weird from depression, has difficulty following directions, and is slow on the job. (R. 147.) The state agency denied Field's application at the initial and reconsideration levels of administrative review. (R. 76-89.) On December 9, 2009, ALJ Brian P. Kilbane held a hearing to consider Field's disability claim. (R. 36.) Field was represented by counsel at the hearing, which included testimony from Field and vocational expert Bonnie S. Martindale. (R. 36-73.)

On March 24, 2010, the ALJ entered his decision denying Field's claims for DIB and SSI. (R. 19-29.) The ALJ found that Field has severe impairments consisting of bipolar disorder, obesity, alcohol abuse disorder, chronic obstructive pulmonary disease, degenerative joint disease and coronary artery disease. (R. 21.) Considering these impairments, the ALJ found that Field retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except he cannot reach overhead, should avoid moderate exposure to fumes, odors, dust, gases, and poor ventilation, and must avoid concentrated exposure to hazards. The ALJ concluded that Field is able to understand, retain, and follow simple job instructions, maintain concentration and attention for extended periods of time, and maintain regular attendance at the workplace. The

4

RFC outlined by the ALJ also found that Field would not require special supervision to sustain a work routine, that Field could be expected to complete a normal workday and workweek without exacerbation of psychological symptoms, that he is able to maintain socially appropriate behavior, and that he can perform the personal care functions needed to maintain an acceptable level of personal hygiene. The ALJ found Field capable of asking simple questions and accepting instruction, and that Field has no significant restrictions in his abilities in regard to work-related adaptation.  (R. 24.)  The ALJ determined that Field was not capable of performing his past relevant work.  (R. 28.)  However, given the evidence obtained from the vocational expert at the administrative hearing, the ALJ found that Field can perform work, such as interviewer, informational clerk and router which exists in significant numbers in the national economy. (R. 29.)

On April 2, 2010, Field requested review of the ALJ's decision, which the Appeals Council denied on October 12, 2011.  (R. 1-6.)  This appeal followed.  On April 30, 2012, the Court granted Fields's motion to supplement the record to provide the second page of Dr. Gallagher's December 4, 2009 report.  The Court has considered the entire record, as supplemented, in reaching its decision in this appeal.

## ANALYSIS

Field has an extensive medical history consisting of coronary artery disease leading to the implantation of a stent.  He has endured shoulder discomfort for which he received conservative treatment.  Field also has a history of chronic obstructive pulmonary disease, but continues to smoke despite this malady.  The ALJ developed an RFC to accommodate these physical limitations, and indeed nothing in the appeal Field brings challenges the ALJ's findings in this

regard. Instead, Field focuses his appeal on the conclusions the ALJ reached as to the limitations

he has from his psychological impairments. The medical record is limited as to the scope of

treatment Field has received for his diagnosed bipolar disorder and depression, which includes

only the treatment records of the treating psychiatrist, Dr. James Gallagher. Unfortunately, these

records are mostly illegible, from which neither the ALJ nor the state agency psychologists could

glean the extent to which Dr. Gallagher's conclusory opinions were consistent with the record as

a whole. Against this backdrop, Field charges that the ALJ failed to accord the proper weight to

the opinion of his treating psychiatrist, improperly assessed the credibility of the limitations he

claimed to have from his impairments and incorrectly posed a hypothetical to the vocational

expert.

### Treating Physician

Field contends that the ALJ erred by failing to give controlling weight to the opinion of

his treating psychiatrist, Dr. Gallagher. The court gives the opinions of a treating physician

controlling weight when the opinion is supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the record.

Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001), 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

> Generally, we give more weight to opinions from your treating sources,
> since these sources are likely to be the medical professionals most able to
> provide a detailed, longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence that cannot be
> obtained from the objective medical findings alone or from reports of
> individual examinations….

SSR 96-2p.

Whether to give the treating physician's opinion controlling weight requires the ALJ to

consider the evidence in support of the opinion and to determine the opinion's consistency with

6

the whole record.  20 C.F.R. § 404.1527(d)(2); SSR 96-2p.  The ALJ considers whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist.  20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ is required to give specific reasons supported by the record if he gives the treating physician's opinion less than controlling weight.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p.

Field has been under the care of his treating psychiatrist, Dr. James Gallagher, since February 2007.  Dr. Gallagher's records are part of this administrative transcript, but unfortunately, the records are largely illegible, and thus, the ALJ could not evaluate the records, and more importantly, could not determine Dr. Gallagher's ongoing assessment of Field's condition or the treatment provided.  In some instances, an ALJ may have a responsibility to contact a medical source provide and obtain further information.  See 20 C.F.R. § 404.1512(e).  This may especially be the case where a claimant pursues a disability claim *pro se*.  Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996).  The ALJ must "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only of the evidence submitted by the claimant when that evidence is inadequate."  Jones v. Astrue, 2011 WL 5833638 (D. Md. Nov. 18, 2011) quoting Walker v. Harris, 642 F.2d 712, 714 (4th Cir.1981); Marsh v. Harris, 632 F.2d 296, 300 (4th Cir.1980).

The burden rests upon the plaintiff to establish an entitlement to disability benefits.  The ALJ's duty to develop the record does not extend, however, to requiring the ALJ to obtain and develop the plaintiff's claim.  Here, the ALJ did not have a transcribed set of records from Dr. Gallagher, but the state agency developed the record during the disability determination stage to

7

obtain Dr. Gallagher's opinion regarding Field's mental impairments and the impact of those impairments on his ability to engage in substantial gainful activity. The state agency contacted Dr. Gallagher's office because of the difficulty reading his office notes. (R. 520). In response, Dr. Gallagher called the state agency and gave a phone interview to Dr. Milan stating that Field could "probably perform simple, unskilled work." Dr. Gallagher further explained that Field's alcoholism is active and "is [not] helping the picture." (R. 524.) The ALJ provided for the evaluation of Field's condition through consultative physicians. The ALJ had an adequately developed record from which he could evaluate the claim presented and the adequacy of Dr. Gallagher's opinion. Id.

Dr. Gallagher also completed a medical source statement in December 2009. In this report, Dr. Gallagher indicated that Field has a poor ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work with or near others without being distracted; and (5) perform at a consistent pace. Additionally, Dr. Gallagher stated that Field could perform certain activities only some of the time, including (1) remembering locations and work-like procedures; (2) understanding and remembering short, simple instructions; (3) carrying out short, simple instructions; (4) performing activities within a schedule; (5) maintaining regular attendance, and being punctual; (6) sustaining an ordinary routine without special supervision; (7) making simple work-related decisions; (8) completing a normal workday or workweek; (9) interacting appropriately with the public; (10) accepting instructions and responding appropriately to criticism from supervisors; (11) getting along with co-workers and peers; (12) responding appropriately to changes in the work setting; (13) being aware of normal hazards and taking

8

appropriate precautions; (14) travelling in unfamiliar places or use public transportation; and (15)

setting realistic goals or make plans independently of others. The medical source statement is a

check box form with no explanation of the treatment Field has received, his overall level of

functioning or the basis for the conclusions as to Field's abilities. (R. 558-559.)

The ALJ accorded Dr. Gallagher's statement lesser weight, analyzing the opinion as

follows:

> As for the opinion evidence, Dr. Gallagher stated in an October 7, 2008
> phone call with the State [A]gency physicia[n] that the claimant could
> "probably" perform simple, unskilled work on a regular basis. He later
> opined in December 2009 that the claimant, as a result of his mental
> impairments, had no useful ability to maintain attention and concentration for
> extended periods, work with others without being distracted by them,
> perform at a consistent pace, and understand, remember, or carry out detailed
> instructions. Dr. Gallagher reported that the claimant had fair abilities to
> remember locations and work-like procedures, perform activities within a
> schedule, sustain an ordinary routine without special supervision, make
> simple work-related decisions, complete a normal workday or workweek,
> interact appropriately with the public, accept instructions and respond
> appropriately to supervisors, get along with co-workers, respond
> appropriately to changes in the work setting, be aware of normal hazards, set
> realistic goals, and understand, remember, and carry out simple instructions.
> He noted that the claimant also had poor concentration and energy. (Ex.
> 25F). Dr. Gallagher's opinions of the claimant's functioning are quite
> conclusory, providing very little explanation of the evidence relied upon in
> forming this opinion. Further, Dr. Gallagher does provide any explanation as
> to how the claimant's alcohol abuse disorder affects him.

Having considered the opinion evidence from Dr. Gallagher, including the opinions given

by telephone as to the ability of Field to engage in some work and the active nature of his

alcoholism, the ALJ turned to the consultative reports of the state agency examiners which

rendered opinions as to Field's functional abilities. The ALJ assigned considerable weight to the

opinions of the state agency physicians, who found that while Field had moderate limitations in

his ability to maintain attention and concentration for extended periods and to understand,

9

remember and carry out detailed instructions, he retained the capacity to understand, retain and follow simple job instructions, maintain concentration and attention for extended periods of time and maintain regular attendance. Moreover, the state agency physicians found that Field could complete a normal workday and workweek without exacerbation of his psychological symptoms.

The record as a whole contains substantial evidence to support the ALJ's decision to attribute lesser weight to the opinion of Dr. Gallagher. The medical source statement is in a check box form without an accompanying statement of reasons to support the opinions. Further, Dr. Gallagher set forth his opinions in his telephone interview with the state agency. The accompanying medical record simply does not support the conclusory opinions offered by Dr. Gallagher in his December 2009 medical source statement.

**Evaluation of Credibility.**

Field claims that the ALJ erred by finding his complaints and the persistence of his complaints not fully credible. Field points generally to his testimony as corroborated by his wife as to his "mental problems" and the difficulty he has concentrating or maintaining employment. When evaluating a claimant's testimony, the regulations direct the ALJ to perform a two-step process. See 20 C.F.R. § 404.1529. The ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. See 20 C.F.R. § 404.1529(b). If such impairment(s) exists, the ALJ then evaluates the intensity, persistence, and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. See 20 C.F.R. § 404.1529(c).

The ALJ did in fact recognize Field's testimony. The ALJ recited this testimony in his opinion, as well as Field's claim that he becomes confused attempting to follow written instructions, that he cannot remember spoken instructions, and has trouble with anger issues, which has caused him to lose jobs. The ALJ also recited Field's testimony as to his physical limitations which affect his ability to lift, reach, talk, climb stairs, complete tasks, concentrate, understand and get along with others. (R. 25-25.)

The evidence of record includes Field's acknowledgement that he received unemployment compensation two quarters prior to the claimed date of disability through the first quarter after the date of disability. Claiming unemployment compensation does not disqualify a claimant from seeking disability. However, the receipt of unemployment benefits which requires one to declare that he is ready, willing and able to work (R. 49) is inconsistent with a disability claim that one is unable to engage in substantial gainful activity. King v. Barnhart, 2005 WL 3087853, at *5 (W.D. Va. Nov. 16, 2005). The fact that a claimant collects unemployment at the same time he is seeking social security disability provides substantial evidence to support an ALJ's finding that a claimant is only partially credible. Shrewsbury v. Astrue, 2012 WL 2789719, at *3 (W.D. Va. July 9, 2012).

Additionally, Field acknowledged during his testimony that he continues to drink despite the admonition not to do so because of the effect that alcohol has on his medications. Likewise, Field has not stopped or even significantly decreased his smoking habit despite being told to do so. Finally, the record is filled with references to Field's activities of daily living, including cooking, shopping and visiting with friends.

11

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984)(finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)  In this case, the ALJ carefully considered the evidence of record as well as the testimony offered by Field and his wife.  I will not interfere with the credibility assessment where the record supports the ALJ's conclusions.  I find, therefore, that substantial evidence supports the ALJ's credibility assessment of  Field and his claims of the limitations on his functional ability.

**Vocational Expert Hypothetical**

Field asserts that the hypothetical presented to the vocational expert failed to include limitations as outlined by Dr. Gallagher.  I have already concluded that substantial evidence supported the ALJ 's decision to give Dr. Gallagher's opinion lesser weight and to afford considerable weight to the opinions of the state agency examiners.  The hypothetical presented to the vocational expert correctly reflects the conclusions of the state agency psychologists and the ALJ's assessment of Field's mental impairments as set forth in the RFC.  I conclude, therefore, that substantial evidence supports the hypothetical questions presented to the vocational expert.

**RECOMMENDED DISPOSITION**

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

Enter: February 6, 2013

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

13